[Docket No. 32]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, | |
| Plaintiff, | Civil No. 24-10768 (RMB-SAK) |
| v. | **OPINION** |
| EASTERN SIGN TECH, LLC and MURDOCH ENGINEERING, LLC | |
| Defendants. | |

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon Defendant Murdoch Engineering LLC's ("Murdoch") Motion to Dismiss Counts III and IV of the Complaint filed by Plaintiff Wilmington Savings Fund Society, FSB ("Plaintiff" or "WSFS") and to partially dismiss the crossclaim filed by Defendant Eastern Sign Tech LLC ("EST"). [Docket No. 32; Docket No. 32-3 ("Murdoch's Br.").] Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, Murdoch's Motion will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a breach of contract and professional negligence action. Plaintiff WSFS entered into two separate but similar agreements with EST to design and install WSFS

signs on two office buildings: one at 1818 Market Street in Center City, Philadelphia (the "Philadelphia Project") and another at 500 Delaware Avenue in Wilmington, Delaware (the "Delaware Project"). [Docket No. 1 ("Compl.") ¶¶ 1, 12.] The contracts warrant that EST's work would be free from defects. [Compl., Ex. 1 ("Philadelphia Contract") § 3.1.12.; Compl., Ex. 2 ("Delaware Contract") § 3.1.12.]. The Philadelphia Contract is governed by Pennsylvania law and the Delaware Contract is governed by Delaware law. [Philadelphia Contract § 15.1; Delaware Contract § 15.1.]

Murdoch served as EST's engineer of record on both Projects. [Compl. ¶¶ 13, 23.] The Philadelphia Contract specifically identifies Murdoch as EST's authorized representative. [Philadelphia Contract §§ 1.2.4, 3.1.2.] The Philadelphia Contract identifies EST as the Project's "Design-Builder." [Philadelphia Contract at 1.] Design-Builder, in turn, is defined as EST or its "authorized representative." [Philadelphia Contract § 1.4.8.]

In 2021, the day after Thanksgiving, the "W" on the WSFS sign at 1818 Market partially detached and fell to the street:



[Compl. ¶ 16.] Luckily, no pedestrians were injured. [*Id.*] WSFS began an inspection of the structural integrity, installation, and design of the rooftop level signs at both 1818 Market and 500 Delaware. [*Id.* ¶¶ 17–19.] The inspections revealed consistent design and installation deficiencies. [*Id.* ¶¶ 20, 22–59.]

WSFS sued EST alleging that EST's failure to properly design, construct, and install the signs constituted a material breach of the Contracts. [*Id.* ¶¶ 60–71.] It also sued Murdoch for breach of the Philadelphia Contract as a third-party beneficiary (Count III) and for professional negligence regarding the Delaware Project (Count IV). [Compl. ¶¶ 72–90.] EST answered the Complaint and brought a crossclaim against Murdoch for indemnification and/or contribution. [Docket No. 18 at 16.]

Murdoch now moves to dismiss the third-party breach of contract claim and the professional negligence claim. It also moves to dismiss EST's crossclaim, but only as it relates to the Delaware Project. [Docket No. 36 ("Murdoch's Reply Br.") at 2–3.] First, Murdoch argues that WSFS cannot state a third-party beneficiary claim under the Philadelphia Contract because the contract specifically excludes all claims between parties other than WSFS and EST. [Murdoch Br. at 6.] Second, Murdoch argues that WSFS's professional negligence claim and EST's crossclaim, as it applies to the Delaware Project, are barred by Delaware's six-year statute of repose for any action involving an "alleged deficiency in the construction or manner of construction of an improvement to real property." 10 *Del. C.* § 8127. The six-year period, it argues, expired well before WSFS filed its Complaint and EST filed its crossclaim. [Murdoch's Br. at 7–8.]

3

## II.    LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

4

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## III.   ANALYSIS

This Court has subject matter jurisdiction based on the diversity of the parties. 28 U.S.C. § 1332(a). WSFS is a Delaware corporation and EST and Murdoch are both New Jersey LLCs. [Compl. ¶¶ 5–7.] WSFS alleges that the amount in controversy is over $75,000. [*Id.* ¶ 9.] When a federal court sits in diversity, it applies state substantive law and federal procedural rules. *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). The parties do not disagree that Pennsylvania law governs the claims related to the Philadelphia Contract and Project and Delaware law governs the

claims related to the Delaware Contract and Project. [Murdoch's Br. at 5, 7; Docket No. 33 ("WSFS's Br."); Docket No. 35 ("EST's Br.").][1]

### A.    WSFS has Adequately Alleged a Breach of Contract Claim Against Murdoch as a Third-Party Beneficiary to the Philadelphia Contract

WSFS's breach of contract claim against Murdoch as a third-party beneficiary to the Philadelphia Contract survives dismissal. To bring a breach of contract claim against a third-party beneficiary under Pennsylvania law, a plaintiff must allege that "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992) (citing *Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828 (Pa. 1950) (plurality opinion)). Murdoch argues that the Philadelphia Contract excludes contractual claims against any party other than WSFS and EST. [Murdoch's Br. at 6.] Specifically, Murdoch points to § 1.4.2. of the Philadelphia Contract which provides that the Contract "shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner [WSFS] and the Design-Builder." [Philadelphia Contract § 1.4.2.]

But "Design-Builder" is defined in the Philadelphia Contract to mean EST *or* its authorized representative and Murdoch is explicitly identified in the Philadelphia

---

[1] The Court also does not disagree. With respect to the contractual claims, the parties agreed that Pennsylvania law would apply to the Philadelphia Contract and Delaware law would apply to the Delaware Contract. [Philadelphia Contract § 15.1; Delaware Contract § 15.1.] Under New Jersey choice of law rules, "when the parties to a contract have agreed to be governed by the laws of a particular state, New Jersey Courts will uphold that contractual choice" so long as it does not violate New Jersey public policy. *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 341, 614 A.2d 124, 133 (N.J. 1992).

Contract as EST's authorized representative. [Philadelphia Contract §§ 1.2.4, 1.4.8, 3.1.2.] So, under its plain language, the Philadelphia Contract creates a contractual relationship between WSFS and Murdoch. *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1008 (Pa. 1998) ("clear and unambiguous contract provision must be given its plain meaning") (citation omitted).

Murdoch does not meaningfully address this point. Instead, it characterizes the Philadelphia Contract's identification of Murdoch as EST's authorized representative—and therefore as a "Design-Builder"—as an ambiguity. [Murdoch's Reply Br. at 1.] That argument rings hollow. The Philadelphia Contract unambiguously identifies Murdoch as EST's authorized representative and defines "Design-Builder" to include any EST authorized representative. Even assuming the Court agreed with Murdoch, however, ambiguities in contractual language are not appropriately resolved on a motion to dismiss. *See Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 163 (3d Cir. 2001) ("hornbook law" that contractual ambiguities must be resolved by a factfinder). *First Liberty Corp. v. Selective Ins. Co. of the Se.*, 2022 WL 16696070, at *2 (E.D. Pa. Nov. 3, 2022) ("[G]ranting a motion to dismiss on claims arising from ambiguous contract provisions is inappropriate."). Thus, WSFS has adequately alleged a third-party breach of contract claim against Murdoch.

### B.    Murdoch Cannot Show, at the Dismissal Stage, that the 500 Delaware Sign Was an "Improvement" Triggering Delaware's Statute of Repose

Delaware's "builder's statute" creates a six-year "limitations period on actions for damages, indemnification, or contribution for damages resulting from personal

7

injuries arising out of any deficiency in the construction of an improvement to real property or the design, planning, supervision, or observation of any such construction." *City of Dover v. Int'l Tel. & Tel. Corp.*, 514 A.2d 1086, 1088–89 (Del. 1986) (citing 10 *Del. C.* § 8127). As relevant here, the six-year period runs from the earlier of the proposed completion date stated in the contract or the date the project was substantially completed. *Id.* (b)(1)(a), (f). The statute is a statute of repose because it prevents a claim from arising at all, "whereas a statute of limitations bars an accrued cause of action." *City of Dover*, 514 A.2d at 1089 (citations omitted).

The Delaware Contract called for a substantial completion date of November 24, 2017, [Delaware Contract § 1.1.7.4.], and was actually completed on December 31, 2017, [Compl. ¶ 53]. Therefore, the six-year period ran, at the latest, by December 31, 2023, nearly a year before the Complaint was filed on November 26, 2024, and over a year before EST asserted its indemnification/contribution crossclaim on January 31, 2025. WSFS and EST do not disagree that the six-year period has expired. They argue, however, that discovery is required to determine whether the WSFS rooftop sign at 500 Delaware is an "improvement" under the statute.

Whether the sign is an improvement is a question of law. *Windley v. Potts Welding & Boiler Repair, Co.*, 888 F. Supp. 610, 613 (D. Del. 1995). Delaware's statute of repose defines an "improvement" to include:

> buildings, highways, roads, streets, bridges, entrances and walkways of any type constructed thereon, and other structures affixed to and on land, as well as the land itself, except that such term shall not include buildings, entrances, walkways and structures used or intended to be used at the time of such construction primarily for residential purposes and uses.

8

10 *Del. C.* § 8127(a)(5).

Delaware courts have articulated three tests to interpret whether something is an "improvement" under the statute. *See Fed. Ins. Co. v. Signtactics, Inc.*, 1998 WL 175882, at *5–6 (D. Del. Mar. 26, 1998) (identifying the three tests). *First*, the Delaware Supreme Court, focusing on the text of the statute, has applied a common law fixtures analysis. *City of Dover*, 514 A.2d at 1090. In *City of Dover*, it held that the manufacturer of a utility pole could not avoid application of the statute of repose because the utility pole was permanently "affixed to and on land," a circumstance clearly contemplated by the statute. *Id.* at 1089–90. The court's fixtures analysis "focus[ed] mainly on the 'intention of the annexor as to whether or not a chattel was affixed to realty for a temporary or permanent purpose.'" *Fed. Ins. Co. v. Signtactics, Inc.*, 1998 WL 175882, at *5 (quoting *Hiab Cranes & Loaders, Inc. v. Serv. Unlimited, Inc.*, 1983 WL 875126, at *2 (Del. Ch. Aug. 16, 1983)); *see also Woessner v. Air Liquide Inc.*, 242 F.3d 469, 476 (3d Cir. 2001) (reading *City of Dover* to apply a common law fixtures analysis).

*Second*, there is the "common sense" interpretation which defines "improvement" as:

> a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor and money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Hiab*, 1983 WL 875126, at *2 (citation omitted); *Fed. Ins. Co.*, 1998 WL 175882, at *5. For example, the Delaware Superior Court in *Davis v. Catalytic* held that a factory's $8

million "slurry cooler" was an improvement under the common sense interpretation because its physical structure indicated that it was meant to be a permanent addition which would enhance the capital value of the factory by enabling the factory to increase its production. 1985 WL 189329, at *5 (Del. Super. Ct. 1985); *Cincinnati Ins. Co. v. Commonwealth Grp. Ltd.*, 2024 WL 26182, at *2 (Del. Super. Ct. Jan. 2, 2024) (building sprinkler system was an improvement under common sense interpretation for similar reasons). In *City of Dover*, the Delaware Supreme Court however, rejected the argument that an improvement must actually enhance the value of property or make the property more useful, even though value enhancement might be useful evidence to help determine whether something is an improvement. *City of Dover*, 514 A.2d at 1090; *Woessner*, 42 F.3d at 476 (cautioning that the common sense interpretation was never adopted by the Delaware Supreme Court in *City of Dover*).

*Third*, there is the "vitality test" which distinguishes between structures "constitut[ing] a permanent part of one of the mechanical systems necessary to the normal function of the particular improvement to real estate" and "equipment or chattels brought into a structure after it is architecturally and mechanically suitable for occupancy" including "furniture, production machinery, appliances, etc." *Hiab*, 1983 WL 875126, at *2 (citing *Brown v. Central Jersey Power & Light Co.*, 394 A.2d 397, 405–06 (N.J. Super. 1978)). The former are improvements under the statute. *See Windley*, 888 F. Supp. at 613 (large "air preheater" in a power plant was an improvement because it was "central to the plant's function"); *see also Woessner*, 242 F.3d at 476

10

(noting that "production machinery" could be an improvement if it is permanent part of the mechanical systems necessary to the normal function of the building, as in *Davis*, 1985 WL 189329, at *5). The latter are not.

Applying each of these tests, the District of Delaware, in an analogous case to the one at bar (which none of the parties cited), denied a defendant sign company's motion for summary judgment. In *Federal Insurance Co. v. Signtactics*, Wilmington Trust (also a bank) leased space in a shopping plaza and contracted with the defendant to install a sign on its building. 1998 WL 175882, at *1. The lights on the sign, which were connected to the building's electrical system, malfunctioned and caused damage to the building. *Id.*

Applying each of the three tests discussed above, the court denied the defendant sign company's motion for summary judgment.[2] *Fed. Ins. Co.*, 1998 WL 175882, at *4–8. Under the vitality test, the sign was not an improvement to the building because there was no evidence that it was "essential to one of the mechanical systems of the building, necessary for occupancy, []or central to the building's function." *Id.* at *6. That is, the building, "could be occupied and used" without the sign. *Id.*

Under the common sense interpretation, the sign was not an improvement because, even though its construction required an expenditure of money and labor ($10,500) and may have made the property more useful to the plaintiff than it otherwise would have been without the sign, the sign was not a permanent addition to

---

[2] The court converted the defendant's motion to dismiss into one for summary judgment. *Id.* at *2.

the building and there was no evidence that the sign added any capital value to the property. *Id*. at \*6–7. Indeed, the defendant sign company "submitted no evidence to support that the absence of a sign on a building would decrease the value of the property." *Id*. at \*7.

And under a common law fixtures analysis, the sign was not an improvement because it was not permanent. The sign, "consisting of fifteen lightweight, portable letters … could be attached to and detached from the building's permanent electrical system without damage to the building or the sign." *Id*. at \*8. Additionally, the court noted that Wilmington Trust did not own the building; it was a lessee, suggesting that there was no intention for the sign to be permanently affixed to the building. *See id*.

The same result applies here, especially at the motion to dismiss stage where the Court is without the benefit of discovery. Under the vitality test, the WSFS sign at 500 Wilmington is not an improvement because, like the sign in *Federal Insurance Co.*, the sign is clearly not part of the mechanical systems of 500 Delaware or central to its functions. 500 Delaware could obviously "be occupied and used without [the] sign." *Id*. at \*6.

Under the common sense interpretation, the sign is not an improvement because there are no allegations suggesting that it was meant to be a permanent addition to the building. Quite the opposite, in fact. Following WSFS's inspection revealing design and installation deficiencies, WSFS had the 500 Wilmington sign removed. [Compl. ¶¶ 42–44, 56, 59 (describing the removal of the signs).] At best, discovery is needed to determine whether the sign added any capital value to 500

12

Delaware. To be sure, as the Delaware Supreme Court has explained, improvements do not need to add value. *City of Dover*, 514 A.2d at 1090; *Fed. Ins. Co.*, 1998 WL 175882, at *7 (suggestion that absence of a sign on a building would decrease the value of the property was unsupported by evidence). Such evidence, may however, be relevant at summary judgment.

Finally, under a fixtures analysis, the sign is not an improvement because it does not appear to have been permanent, rather, as alleged in the complaint, it appears capable of being "attached to and detached" to the building without any damage to the building or the letters themselves. *Fed. Ins. Co.*, 1998 WL 175882, at *8; [Compl. ¶¶ 42–44, 56, 59.][3] Thus, at least at the dismissal stage, the Court finds Delaware's statute of repose inapplicable.

## IV.    CONCLUSION

For the foregoing reasons, Murdoch's Motion to Dismiss will be **DENIED**. An accompanying Order shall issue.

**April 14, 2025**                        **s/ Renée Marie Bumb**
Date                                      RENÉE MARIE BUMB
                                            Chief United States District Judge

---

[3] It appears that, during discovery, WSFS will also produce evidence that it is not the owner of 500 Delaware but rather, a tenant. [WSFS Br. at 2.] Like Wilmington Trust in *Federal Insurance Co.*, if WSFS is only a tenant, that would, at summary judgment, support an argument that the sign was not a fixture because, once WSFS decides not to renew its lease at 500 Delaware, the WSFS letters will have to be removed, suggesting that the sign was never meant to be permanent. *Fed. Ins. Co.*, 1998 WL 175882, at *8.